O

# United States District Court
# Central District of California

| | |
|---|---|
| ELIA VIVEROS GIRON, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A.; REGIONAL TRUSTEE SERVICES CORPORATION; DOES 1–10, inclusive, <br><br> Defendants. | Case No. 2:14-cv-02437-ODW(VBKx) <br><br> **ORDER GRANTING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND [11]** |

## I. INTRODUCTION

Plaintiff Elia Viveros Giron ran into financial difficulty and fell behind on her $356,000 mortgage. She applied for a loan modification, but Defendant Wells Fargo Bank, N.A. denied her application. Despite recording a notice of default against Giron's property, Wells Fargo never foreclosed and actually withdrew the notice. Giron now brings several California statutory and common-law claims against Defendants arising out of the failed loan-modification attempt. But the Court finds that all of the claims fail either as a matter of law or pleading adequacy. The Court therefore **GRANTS** Wells Fargo's Motion to Dismiss with partial leave to amend.[1] (ECF No. 11.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Giron is the owner of the property located at 3620 Altamont Street, Los Angeles, California 90065 (the "Property"). (Compl. ¶ 3.) On October 24, 2007, she obtained a $356,000.00 mortgage from World Savings Bank FSB and executed a deed of trust against the Property. (*Id.* ¶ 19.) Wells Fargo has since succeeded to World Savings Bank's interests, including Giron's loan. (*Id.* ¶¶ 4, 20.)

In April 2012, Giron lost her job and experienced difficulty in meeting her monthly mortgage payments. (*Id.* ¶ 21.) She therefore contacted Wells Fargo seeking assistance. (*Id.*) She tried sending Wells Fargo some money toward her monthly payments, but the bank refused the deficient amounts. (*Id.* ¶ 22.) Wells Fargo employees also gave her contradicting advice on whether she should continue to pay her loan at all during the application-review period. (*Id.* ¶ 26.)

On April 23, 2012, Defendant Regional Trustee Services Corporation recorded a Notice of Default against the Property. (*Id.* ¶ 28; RJN Ex. H.) An agent of Wachovia Bank FSB—the immediate successor to World Savings Bank—attached a declaration to the Notice, indicating that the bank had engaged in due diligence in attempting to contact Giron regarding foreclosure as required by California Civil Code section 2923.5(g). (RJN Ex. H.)

In January 2013, Giron submitted a Home Affordable Modification Program application through Wells Fargo. (*Id.* ¶ 23.) She pursued the modification through December 2013 when the bank informed her that it denied her application. (*Id.*, ¶ 25.) Wells Fargo denied the application for "negative NPV." (*Id.* ¶ 25.)

On October 15, 2013, Regional Trustee Services recorded a Notice of Trustee Sale and set a sale date of November 6, 2013. (*Id.* ¶ 33.) But to date, Wells Fargo has not foreclosed on the Property. (*See id.* ¶ 8.)

On February 24, 2014, Giron filed suit against Wells Fargo and Regional Trustee Services Corporation in Los Angeles County Superior Court, alleging claims for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

Code §§ 17200–10, and Civil Code section 2923.5; breach of the implied covenant of good faith and fair dealing; fraud and misrepresentation; and negligence. (Not. of Removal Ex. A.) Wells Fargo subsequently removed the action to this Court, invoking diversity jurisdiction. (ECF No. 1.)

On May 8, 2014, Wells Fargo moved to dismiss Giron's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) Giron failed to oppose the Motion. That Motion is now before the Court for decision.

## III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when

1 "the court determines that the allegation of other facts consistent with the challenged
2 pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*
3 *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d
4 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

The Court finds that Giron's claims for alleged breach of the implied covenant of good faith and fair dealing and negligence fail as a matter of law and that she has failed to adequately plead her fraud, California Civil Code section 2923.5, and UCL claims.

### A. Implied covenant of good faith and fair dealing

Giron brings a claim for breach of the implied covenant of good faith and fair dealing. California law implies in every contract a covenant of good faith and fair dealing. *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 524 (2013). The implied covenant "prevents the contracting parties from taking actions that will deprive another party of the benefits of the agreement." *Id.* The purpose and express terms of the contract limit the implied duty, and a party may not use the covenant to create additional rights not contemplated by the contract's term. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).

But the existence of a contract is the *sine qua non* of the existence of the covenant. *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 21 Cal. App. 4th 1586, 1599 (1994). That is, absent a valid, existing contract, there is no implied covenant of good faith and fair dealing and no obligation that the parties negotiate fairly. *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008); *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992).

Wells Fargo argues that Giron cannot state an actionable breach of the implied covenant, because she may not use the implied covenant to impose procedures regarding a loan-modification that falls outside the loan's explicit requirements.
///

Wells Fargo also contends that Giron cannot establish any damages, because she does not allege that Wells Fargo foreclosed on her loan.

The Court finds that Giron's implied-covenant claim fails as a matter of California law to the extent that she alleges any claim related to the loan modification. Not only has Giron failed to adequately plead what existing contractual right Wells Fargo allegedly breached via the implied covenant, but as a matter of logic she could not plead such a right. A loan modification creates a new agreement, as the parties change the terms of the existing deed of trust and promise to perform different obligations. It is axiomatic that California law does not imply any duty of good faith and fair dealing in an agreement not yet in existence. *Fireman's Fund Ins.*, 21 Cal. App. 4th at 1599. In fact, California's newly minted Homeowners' Bill of Rights specifically provides that "[n]othing in the act that added [section 2923.4 dealing with loan modifications], however, shall be interpreted to require a particular result of that process." Cal. Civ. Code § 2923.4(a).

Absent an explicit contractual provision entitling a party to a future loan modification, a party does not violate the implied covenant of good faith and fair dealing under California law by failing to engage actively or at all in loan-modification negotiations. Giron's claim on this ground necessarily fails.

But Giron does allege a potentially actionable basis for violation of the implied covenant of good faith and fair dealing. She states that Wells Fargo "[a]dvised Plaintiff to cause (and maintain) the default status of their [*sic*] Home Loan." (Compl. ¶ 45(b).) If Wells Fargo actually did prevent Giron from realizing the benefit of the loan contract—namely, maintaining ownership the Property—through encouraging default, Giron might be able to make out an implied-covenant claim. But Giron does not link this terse allegation with any specific provisions from the parties' loan contract—a prerequisite to establishing a valid claim. *See Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 525 (2013) (sustaining a demurrer without

/ / /

leave to amend due to a failure to link the alleged breach of the implied covenant with specific contractual provisions).

Giron further alleges that Wells Fargo's conduct "deprived Plaintiff of the protections guaranteed by California Civil Code § 2923.5." (Compl. ¶ 45 (emphasis omitted).) But this allegation of an alleged statutory violation belies an actionable implied-covenant claim. Simple logic demonstrates the fallacy of Giron's reasoning. California law only implies the covenant of good faith and fair dealing in existing, valid contracts. The express terms of the contract limit the implied right, that is, the covenant cannot expand the parties' rights beyond the contract's explicit terms. This means that the contract terms necessarily cabin the analysis. Civil Code section 2923.5 is a statute—not a contractual provision. Unless parties specifically incorporate the statute into their loan contract, then section 2923.5 cannot, as a matter of law, serve as a basis for alleged violation of the implied covenant of good faith and fair dealing.

The Court accordingly **GRANTS** Wells Fargo's Motion as to Giron's implied-covenant claim and permits leave to amend only with respect to Wells Fargo allegedly causing Giron to enter or maintain default and whether the loan contract incorporated section 2923.5 into its terms.

**B.  Fraud**

Fraud pleadings are subject to an elevated standard, requiring a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means that fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Accordingly, when suing more than one defendant, a plaintiff cannot "merely lump

multiple defendants together" but rather must differentiate the allegations and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65.

Under California law, the elements for an intentional-misrepresentation, or actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir. 2007) (citing *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003)); *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (Ct. App. 1997).

Wells Fargo argues that Giron has failed to plead the specifics of any actual misrepresentation and that a promise of a future event, such as a loan modification, cannot support a fraud claim. Wells Fargo also contends that Giron has not established that she suffered any damage, because she still had an opportunity to seek other foreclosure-avoidance options after the bank denied her application in December 2013.

Reviewing Giron's Complaint, it is clear that she did not comply with Rule 9(b)'s heightened pleading requirements. She alleges that Wells Fargo and its employees assured her that she qualified for a loan modification, told her that they had received all required documentation, advised her to stop making payments on the loan to improve her chances of qualifying for a modification, and generally "intentionally provided false information regarding their [*sic*] applications and loan." (Compl. ¶ 48(a)–(d). But nowhere in these allegations does Giron identify who made the alleged statements, when they were made, and the other circumstances surrounding them. Generalized allegations that at some unknown point a vague statement was made do not sufficiently put Wells Fargo on notice of Giron's fraud claim to satisfy Rule 9(b) and California's fraud elements.

Neither has Giron established that she suffered damages resulting from the alleged fraud. She tersely alleges that "Plaintiff sustained an injury in an amount to be

proven at trial." (*Id.* ¶ 55.) What "injury" she actually suffered is a mystery. She must allege it now—not simply wait until the day of trial.

The Court thus **GRANTS** Wells Fargo's Motion on this ground **WITH LEAVE TO AMEND**.

## C. Negligent supervision

Giron additionally brings a claim for "negligent supervision." Under California law, the "existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (Ct. App. 1991). But generally, a financial institution does not owe its borrower a duty of care "when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 1096. A lender exceeds its "conventional role" as a money lender when it "actively participates" in the financed enterprise "beyond the domain of the usual money lender." *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (Ct. App. 1980) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

Wells Fargo argues that Giron's negligent supervision claim is really just a run-of-the-mill negligence claim under a different name. The bank contends that the processing of Giron's loan-modification application falls within the ordinary role of a money lender, thus knocking out the duty-of-care element in Giron's negligence claim. Wells Fargo also asserts that Giron cannot establish any damages, because she had a preexisting legal obligation to make loan payments to Wells Fargo.

A negligence claim by any other name is still a negligence claim. The fact that Giron titled her claim "negligent supervision" does not change the basis undergirding it: negligence. *See Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (Ct. App. 2006) (noting that negligent supervision is based in negligence). Considering this common-law foundation, the Court finds that California law precludes any negligence claim against Wells Fargo arising out of the failed loan-modification attempt. The California Court of Appeal recently held,

> We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct.

*Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (Ct. App. 2013). In fact, the Court of Appeal in *Delfino* specifically affirmed summary judgment against a plaintiff on the basis that the defendant-employer did not owe her any duty of care—a necessary predicate to any negligent-supervision liability. 145 Cal. App. 4th at 815. Since Wells Fargo owed Giron no duty of care in negotiating a loan modification, her claim similarly fails as a matter of law.

The Court thus **GRANTS** Defendant's Motion as to Giron's negligent-supervision claim **WITHOUT LEAVE TO AMEND**.

### D. California Civil Code section 2923.5

Regional Trustee Services Corporation recorded the Notice of Default and Election to Sell Under Deed of Trust against the Property on April 23, 2012. (RJN Ex. H.) The California Legislature amended Civil Code section 2923.5 effective January 1, 2013, by enacting the Homeowners' Bill of Rights. The current version of

section 2923.5 is thus different from the version in effect when Regional Trustee Services recorded the Notice of Default. The Court accordingly must apply the prior version of section 2923.5.

As of January 1, 2010, section 2923.5 provided that a mortgagee, trustee, beneficiary, or authorized agent could not record a notice of default until either 30 days after it had made contact with the borrower regarding foreclosure-prevention alternatives or after establishing due diligence in attempting to contact the borrower. Cal. Civ. Code § 2923.5(a) (effective Jan. 1, 2010–Dec. 31, 2012).

Wells Fargo argues that Giron failed to state a viable claim under section 2923.5, because she did not allege that Wells Fargo failed to satisfy either of the statute's dual means of compliance. That is, she did not allege that Wells Fargo failed to undertake due diligence in attempting to contact her. *See* Cal. Civ. Code § 2923.5(g).

Wells Fargo correctly notes that Giron has only alleged that the bank failed to pursue one possible avenue of compliance with section 2923.5, namely, actual contact with Giron. But she must allege both compliance possibilities in order to state an actionable claim. That is, even if Wells Fargo did not contact her to discuss her financial situation and foreclosure alternatives, the bank could still escape liability if it establishes "due diligence" in attempting to contact her as defined in the statute. *See* § 2323.5(g). Giron's failure to negate Wells Fargo's asserted due diligence is fatal to the survival of her section 2923.5 claim.

The Court therefore **GRANTS** Wells Fargo's Motion on this ground **WITH LEAVE TO AMEND.**

**E.     UCL**

Wells Fargo moves to dismiss Giron's UCL claim, arguing that she lacks statutory standing and that she has failed to state an actionable violation. The Court agrees with the latter point.

///

*1.     Standing*

To have standing to sue under the UCL, a plaintiff must have "suffered injury in fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The California Supreme Court held that to satisfy this statute, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).

Wells Fargo argues that Giron lacks standing to sue under the UCL, because any loss she may have suffered resulted from her nonpayment of her mortgage and not from the bank's alleged conduct.

In her Complaint, Giron alleges that Wells Fargo's unfair business practices caused her to pay "additional moneys for the fees and additional moneys to avoid foreclosure." (Compl. ¶ 42.)  While hardly a model of pleading perfection, the Court takes Giron's allegations as true that she paid these additional fees as a result of Wells Fargo's conduct. The Court therefore finds that she has standing under the UCL.

*2.     Sufficiency of allegations*

Wells Fargo asserts that it was not under any contractual duty to accept payment after Giron went into default per the loan contract's terms, so this conduct did not violate the UCL. The bank also argues that section 2923.5 cannot serve as a predicate to UCL liability, because Giron failed to state an actionable claim under that section.

UCL's "unlawful" prong "borrows" violations of other laws such that a "defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law." *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Ct. App. 2005) (internal quotation marks omitted); *see also Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).

Since the Court has granted Wells Fargo's Motion on all of Giron's other claims, there are no potentially viable claims to underlie her UCL claim via the "unlawful" prong.

To state a claim under the UCL's "fraudulent" prong, a plaintiff "need only show that members of the public are likely to be deceived." *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992) (internal quotation marks omitted). No one specifically addresses whether members of the public are likely to be deceived by Wells Fargo's conduct as Giron alleges. The Court has reviewed Giron's Complaint and is unable to locate an allegation that speaks to whether the lender's conduct is likely to deceive the public. Her UCL claim thus fails under the "fraudulent" prong.

Interpreting the UCL's "unfair" term, the California Supreme Court held that "the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Giron merely alleges that "the above-described conduct by Defendants WELLS, its [*sic*] agents, and/ or employees were immoral, unethical, oppressive [*sic*] unscrupulous, substantially injurious to consumers, offends public policy and therefore tantamount to unfair and fraudulent business practice(s)." (Compl. ¶ 40.) But this bare allegation does not establish how the "above-described conduct" is unfair. "Unfair" under the UCL does not simply mean unfair in the colloquial sense. *See Cal-Tech Commnc'ns*, 20 Cal. 4th at 182. Rather, unfair conduct is analogous to anticompetitive activity. The Court cannot discern any anticompetitive activity allegedly undertaken by Wells Fargo in Giron's current allegations.

The Court consequently **GRANTS** Wells Fargo's Motion as to Giron's UCL claim **WITH LEAVE TO AMEND**.

/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Wells Fargo's Motion to Dismiss. (ECF No. 11.) If Giron may do so consistent with Rule 11(b), she may amend her Complaint within 14 days with respect to the claims for which the Court granted leave to amend as enumerated above.

**IT IS SO ORDERED.**

May 27, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**